Burton S. Gherman, J.
While the result will be more troublesome than fatal, this motion, still illustrates one of the procedural problems which arise because of the limited jurisdiction of the Civil Court and presents one more reason why the State Supreme Court and the Civil Court of the City of New York should be consolidated.
The plaintiff moves to dismiss two counterclaims pursuant to CPLR 3211 (subd. [a], par. 2) for lack of jurisdiction of the subject matter. Initially the tenant counterclaimed for prop *1098 erty damage in the sum of $40,000 pursuant to subdivision (b) of section 208 of the New York City Civil Court Act in a nonpayment summary proceeding. The proceeding was settled and the counterclaim severed. Shortly thereafter, the landlord, who had now been designated as the defendant, served its answer, consisting of a general denial and a counterclaim for waste in the amount of $33,000. It is these counterclaims which the plaintiff seeks to dismiss. For convenience the severed action was designated as the complaint; however, it was a counterclaim interposed in a special proceeding. The subsequent service of a counterclaim was in fact a counterclaim to a counterclaim. While a “Rose is a rose is a rose” (Sacred Emily by Gertrude Stein, 1917), a counterclaim is not a rose and tautologically and procedurally speaking, there cannot be a counterclaim to a counterclaim. There is simply no rule or statute which permits such procedure, whether it be called a counterclaim or dressed up as a reply. (Swertz v. Swertz, 28 Misc 2d 904; Habiby v. Habiby, 23 A D 2d 558.) This is particularly true in the Civil Court, where although counterclaims of unlimited amounts may be entertained (CCA, § 208), our initial monetary jurisdiction has remained limited and constant at $10,000 during one of the worst inflationary periods in our 200-year history. Such bootstrap pleading efforts as were attempted in this ease could conceivably convert a modest case at law into one involving millions and thus circumvent our jurisdictional requirements.
However, consider the plight of the defendant. While the cause of action for waste is the result of the landlord-tenant relationship, it is an action at law. (Real Property Actions and Proceedings Law, vart. 8.) It is not of such a nature that it could have been raised in a summary proceeding. (Real Property Actions and Proceedings Law, art. 7.) Therefore, initially the landlord, assuming the claim was in existence at the time of the summary proceeding, would have had to institute the summary proceeding and the action for waste in the Supreme Court. However, the Supreme Court discourages summary proceedings. (Matter of Mahshie v. Dooley, 48 Misc 2d 1098; Antique & Period Furniture v. Lassandro, 40 Misc 2d 635; Matter of 3505 Realty Corp. v. Weinberger, 41 Misc 2d 254.) In any event, in the present circumstances, he must now either bring a new action for waste in the Supreme Court and move to consolidate this action with that one (Notarius v. Hess Oil & Chem. Corp., 30 A D 2d 663) or perhaps seek a transfer under subdivision (d) of CPLR 325 and then move to consolidate in *1099 this court. There is no guarantee that this would be granted. The situation could conceivably arise where two actions involving the same subject matter would be in two courts, resulting in a race to conclusion. And with due modesty it must be pointed out that since the Civil Court calendars are current, the action in this court would be concluded first. This might lead to an inequitable result.
This procedural difficulty therefore illustrates one of the many reasons why the Civil Court and the Supreme Court should be merged. While only two city blocks apart, the jurisdictional differences make them light years away, all to the consternation of the practicing lawyer. There is no earthly reason why these claims should not be heard together in the first instance. As previously stated, ours is a court of limited jurisdiction, but as Daniel Webster said “ there are those who love it.” (Dartmouth Coll. Case, 17 U. S. 518 [1818].) We welcome all causes at law (not equity) which conform to our jurisdictional monetary limit.[1] But we cannot abide counterclaims to counterclaims which attempt to circumvent our modest jurisdiction. Accordingly, the motion is granted and the counterclaims dismissed.
(On Motion to Resettle, July 9, 1974)
Motion to resettle the order to sever the dismissed counterclaims and transfer them to the Supreme Court of the State of New York, New York County is granted.
The Constitution of New York State provides that the Civil Court shall transfer to the Supreme Court an action or proceeding where it has no jurisdiction. (N. Y. Const., art. VI, § 19, subd. f.) This is, of course, subject matter jurisdiction. (Kemper v. Transamer. Ins. Co., 61 Misc 2d 7; Kaminsky v. Connolly, 73 Misc 2d 789.) While the court is not certain that the dismissed counterclaims are an action or proceeding within the meaning of the Constitution, it will so consider them in view of the definitions in the CPLR. (CPLR 105, subds. [b], [d].) Moreover, the service of the counterclaims upon plaintiff’s attorney in these circumstances satisfies due process and gives the court the requisite in personam jurisdiction. (Norry v. Land, 44 Misc 2d 556; CPLR 303, 3019.)
*1100 Prior to the enactment of article VI (§ 19, subd. f) of the State Constitution, it was the practice of the courts of limited jurisdiction in their discretion to hold a motion to dismiss for lack of subject matter jurisdiction in abeyance, pending a motion to transfer made in the Supreme Court. However, the constitutional provision now makes transfer mandatory. This will not in this case solve the problem which the Constitution undoubtedly sought to solve. For a motion to consolidate or to remand must still be made in the Supreme Court. Thus, the delay persists. Court consolidation would, of course, avoid all of this.
Accordingly, the motion is granted, the counterclaims severed and deemed the complaint in the Supreme Court action and it is directed that this complaint be transferred to the Supreme Court, ¡New York :County, ,by presentation to the Clerk of said court with a copy of this order within 15 days.

. It should be noted, however, that 40% of all Supreme Court civil dispositions in 1973 were accomplished by Judges of the Civil Court, either by assignment as Acting Supreme Court'Justices or by transfers pursuant to CPLR 325. (Annual Report Civil Court, 1973, Justice Never Rests, Edward Thompson, JCS, Administrative Judge.)